ALEXANDER v. CONLEY et al. (No. 7525.)

(Court of Civil Appeals of Texas. Dallas. June 3, 1916.)

1. MORTGAGES &39. — ABSOLUTE DEED AS MORTGAGE—EVIDENCE—SUFFICIENCY.

Whether deed was given as a mortgage *held* on the evidence to be a jury question.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 112, 113; Dec. Dig. &39.]

2. MORTGAGES &32(3) — ABSOLUTE DEED AS MORTGAGE—DETERMINATION BY ATTENDANT CIRCUMSTANCES.

A judgment creditor's attorney purchased land on an execution sale which he conveyed to a grantee, who paid the judgment debts with the understanding that such grantee would convey to the judgment debtor when reimbursed for his outlay. *Held*, the attorney's deed was in effect a mortgage.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 60, 84; Dec. Dig. &32(3).]

3. TRESPASS TO TRY TITLE &6(1)—TITLE—MORTGAGEE.

A mortgagee who has never been in possession cannot maintain a suit in trespass to try title.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 5–7, 9, 15, 16; Dec. Dig. &6(1).]

4. APPEAL AND ERROR &1062(2)—HARMLESS ERROR—SUBMISSION OF ISSUES.

In trespass to try title, the refusal to submit special issues as to appellees' diligence in not discovering a prior deed to appellant is harmless, where the jury found that such deed was a mortgage, thereby preventing appellant from maintaining his form of action.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4213; Dec. Dig. &1062(2).]

5. APPEAL AND ERROR &1058(2)—HARMLESS ERROR — ADMISSION OF SIMILAR EVIDENCE BY SAME WITNESS.

Excluding of grantee's testimony that he would not have taken the deed in question as a mortgage is harmless, where he is permitted to repeatedly state that it was an absolute conveyance.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4195, 4201; Dec. Dig. &1058(2).]

6. EVIDENCE &273(2)—DECLARATIONS AS TO TITLE—OWNER OF LAND.

Prior to an execution sale, the record owner told the purchaser that the judgment debtor owned the land, and the debtor confirmed it. *Held*, the debtor's statement was admissible on the issue of title, where appellant claimed under a prior unrecorded deed of the record owner.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1111, 1112; Dec. Dig. &273(2).]

7. TRIAL &255(4)—INSTRUCTIONS—REQUESTS—NECESSITY—PURPOSE OF EVIDENCE.

In an action to try title, receiving evidence admissible on the question of appellees' care in not discovering an unrecorded deed to appellant, but inadmissible on the question whether such deed was a mortgage, is not reversible error when no request was made to limit its effect.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 632; Dec. Dig. &255(4).]

Appeal from District Court, Kaufman County; F. L. Hawkins, Judge.

Action by W. N. Alexander against B. K. Conley and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Woods & Morrow, of Kaufman, for appellant. S. J. Osborne, Wynne & Wynne, and Huffmaster & Huffmaster, all of Kaufman, for appellees.

RASBURY, J. This is an appeal from a judgment in favor of appellees, who were defendants below, in a suit of trespass to try title to lands in Kaufman county. No issue arises upon the sufficiency of the pleading, and for that reason it will not be detailed.

The land in dispute is 50 acres out of the W. A. Thompson survey in Kaufman county, the parties claiming D. F. Fitzgerald as the common source of title, and the following constitutes appellant's chain of title: On December 28, 1903, J. E. Mathis recovered judgment in justice court of Kaufman county against Fitzgerald for $43.25. Subsequently, the land in controversy was levied upon by virtue of execution issued out of said judgment and sold, and in turn conveyed by the constable by the usual form of deed to Ed Sewell. Sewell recorded his deed September 14, 1904. On March 31, 1905, Sewell conveyed the land to W. N. Alexander, appellant, reciting a consideration of $40 paid. Appellant recorded his deed July 5, 1914. The following constitutes appellees' chain of title: On April 29, 1910, John Persche recovered judgment in justice court of Kaufman county against Fitzgerald for $120.86. Subsequently the land in controversy was levied upon by virtue of execution issued out of said judgment and sold, and in turn conveyed by the constable by the usual form of deed to Persche. The deed was dated July 5, 1910, and was recorded July 30, 1910. By deed dated October 6, 1910, and recorded November 21, 1912, Persche conveyed the land to Ross Huffmaster. Huffmaster conveyed to McCormick October 9, 1910, the deed being recorded October 21, 1912, and being in correction of deed of December 22, 1910. The several conveyances enumerated, the vendees in which were made parties to the suit, contain provisions concerning the consideration therefor and the manner of its payment; but these provisions are not material to the disposition of the appeal, and for that reason are not detailed. Other necessary facts will be stated later.

There was trial by jury, to whom the court submitted certain special issues of fact and upon the answers to which judgment was entered for appellees, defendants below, and from which entry this appeal is prosecuted.

[1] The first assignment of error complains of the action of the court in submitting to the jury the following special issue of fact:

"Does the evidence show that the deed of Ed Sewell to plaintiff, Alexander, was intended by the parties as a mortgage or security for debt or other like purpose?"

In connection with the issue so submitted to the jury, it is necessary to state that ap-

pellees by appropriate pleading alleged that, while the deed from Sewell to appellant was absolute on its face, it was in truth given in security of money advanced by appellant to Sewell in payment of the Mathis judgment with the understanding that same would be reconveyed to Fitzgerald when the debt was repaid, and hence the instrument was but a mortgage. It was that the jury might determine that claim that the special issue was submitted. Appellant contends, first, that such issue should not have been submitted to the jury because the evidence did not raise it. Both Alexander and Sewell testified on the issue. A careful analysis of Sewell's testimony discloses that he was attorney for J. E. Mathis, his father-in-law, and, before suing Fitzgerald, he endeavored to collect from him, and explained that if the debt was not paid he would sue. Fitzgerald told Sewell the land was incumbered, that he could not pay the Mathis debt, and for Sewell to do as he pleased. Sewell did sue and secured judgment, after which execution was levied upon the land, which was bought by Sewell at the constable's sale under the judgment and deed thereto taken in his name; and, he intended to bring suit for its possession. However, after the conveyance to Sewell, and before suit for possession was commenced, Fitzgerald conferred with Sewell about the matter, and, in the presence of Alexander, told Sewell he could not pay the judgment debt, but if he would transfer his claim and the land to Alexander he would carry it and permit Fitzgerald to pay it off later. To this Sewell agreed, and Alexander paid Sewell the amount of the judgment, and he conveyed the land to him with the understanding between Sewell, Fitzgerald, and Alexander that the conveyance was in security of the debt paid by Alexander. Fitzgerald did not testify, but it appears from the testimony that Fitzgerald was in possession of the land when it was sold under the Persche judgment. Appellant was never in actual possession of the land, never rendered same for taxation or paid taxes thereon, or attempted to secure possession or control thereof. From 1904 to 1910, the tax was paid in the name of Fitzgerald. The witness R. E. Conner cultivated the land during 1908, 1909, as the tenant of Fitzgerald, accounting to him for the rent, and in 1910, 1911, as the tenant of Conley, appellee.

Appellant, who was a witness, denied that he made the arrangement testified to by Sewell and, on the contrary, asserted that the deed evidenced an outright sale; the consideration being the satisfaction of the Mathis judgment and certain other indebtedness due him by Fitzgerald, secured by lien on the land in favor of a former owner, although it was in evidence, without dispute, that appellant, long after the deed from Sewell to him was executed, renewed and extended the debt, supposed to be satisfied by the conveyance, at the request of Fitzgerald. Ap-

pellant's explanation of that circumstance, however, was that he was willing to reconvey the land to Fitzgerald notwithstanding his deed, if he would repay the debt. There are other facts and circumstances in the record, which would tend to sustain a finding of the jury in favor of either party. What we have said, however, is sufficient, it seems to us, to demonstrate that the finding of the jury is not without support in the evidence, and that the instant case is one of those which, because of its conflicts, demonstrates the wisdom of referring to the jury such matters and because of which the contention of appellant is respectfully overruled.

[2, 3] It is next urged under the same assignment of error that, before a deed absolute on its face may be construed a mortgage, the relation of creditor and debtor must exist between the vendor and the vendee or those to be benefited thereby, and it appearing that that relation did not exist between Sewell and Alexander, or Sewell and Fitzgerald, the instrument is and remains, as matter of law, a deed absolute. It is true that the relation of creditor and debtor never existed between Sewell and Alexander. It may also be conceded that that relation as between Sewell and Fitzgerald ceased to exist when the land was conveyed by the constable on the theory that the conveyance satisfied the judgment of Mathis for whom Sewell was acting. Notwithstanding such conceded facts, we are of opinion that the relation of creditor and debtor was created as between appellant and Fitzgerald by the conveyance of the land to the former for the purpose found by the jury. While the title passed to Sewell, and while such fact may have in law satisfied the debt of Mathis, Sewell nevertheless had the right to reconvey same to Fitzgerald on such conditions as he might impose. Sewell testified, and the jury in effect found, that he agreed to reconvey upon payment of the Mathis debt. This could only be effected by conveying to Alexander, who advanced the money, in trust for Fitzgerald, and the jury further found that the purpose of the conveyance was to secure appellant in payment of the amount so advanced. The legal result of such facts is that the deed, though on its face absolute, was in fact a mortgage. Such being the situation, and appellant never having been in possession of the lands, appellant was not entitled, as urged by appellees in counter propositions, to dispossess appellees by suit of trespass to try title. His remedy was a suit for his debt and foreclosure of his mortgage. Edrington v. Newland, 57 Tex. 627; Wiggins v. Wiggins, 16 Tex. Civ. App. 335, 40 S. W. 643, and cases cited. It is so well settled that a deed absolute on its face may be shown by parol to be a mortgage or security for money loaned or a debt owing, that we forego the citation of authority in support of that rule.

[4] The refusal to submit to the jury several special issues of fact, relating to the

diligence of appellees in ascertaining in whom the outstanding title, indicated by the deed from Fitzgerald (by constable) to Sewell, reposed, is made the basis of several assignments of error. If it should be conceded that error is shown, though we think that issue was correctly presented by the court, it would nevertheless be immaterial under the finding of the jury that the deed under which appellant claimed the land was not a deed but a mortgage, and as a consequence appellant's remedy was a suit for debt and foreclosure.

[5] On the issue as to whether the deed was in fact a mortgage, counsel asked appellant: "Would you have taken the deed from Sewell to you as a mortgage or trust on this property?" Upon objection the witness was not permitted to answer. Such action is assigned as error. The answer of the witness would have been that the deed was taken by him as an absolute conveyance in satisfaction of his debt and to avoid foreclosure. While the answer which the witness would have made is not in any sense responsive to the question, since it is not a statement of what the witness would have done, but what he did do, at the same time, the witness was permitted repeatedly to say that the deed was an absolute conveyance; the consideration being the satisfaction of the debt he held against Fitzgerald, and as a consequence the ruling, if erroneous, was harmless.

[6, 7] Ross Huffmaster, who secured judgment against Fitzgerald for Persche and who caused the levy of execution on the land in controversy from said judgment and bought it in for Persche, was a witness, and testified that before he bought the land for Persche he examined the record and found the title in Sewell. He then called upon Sewell and inquired of him whether he owned the land, Sewell informing him that, while he had bought it at constable's sale, Fitzgerald had paid off the judgment and received the land back. Huffmaster then called upon Fitzgerald and inquired of him "as to who owned the land," and to which Fitzgerald replied that "he owned it and that he got the land back." Appellant objected to the admission of the quoted testimony, and assigns as error the action of the court in admitting same. On the issue of title, we think the testimony was admissible, since it was the duty of Huffmaster, acting for Persche and having knowledge of the deed to Sewell, to inquire whether he (Sewell) still claimed the property. Having been informed by Sewell that it had gone back to Fitzgerald, it was his duty to inquire of him if he was still the owner. Being without actual knowledge of the unrecorded deed to Alexander, he had the right to reply upon the statements of Sewell and Fitzgerald. If it can be said that the testimony was inadmissible on the issue of whether the deed was a mortgage, then, being admissible on the issue of title, it was the duty of appellant to request the court to restrict it to its legitimate purpose, and, having failed to do so, it does not constitute reversible error.

We have carefully examined all remaining assignments of error, some of which relate to charges refused and given and some of which relate to the admission or exclusion of testimony; but because, in our opinion, they become immaterial, in view of the conclusion we have reached on other issues, same are overruled.

For the reasons stated, the judgment is affirmed.