**PALMER v. KATZ.**

No. 2644.

Court of Civil Appeals of Texas. Eastland.

April 2, 1948.

Rehearing Denied April 23, 1948.

452

Robert Lee Bobbitt, of San Antonio, Laurie M. Huck, of Laredo, and Ralph W. Brite and Robert Lee Bobbitt, Jr., both of San Antonio, for appellant.

Boyle, Wheeler, Gresham & Davis, of San Antonio, for appellee.

LONG, Justice.

Plaintiff Joe C. Palmer, sued defendant Sidney Katz, upon three separate counts: (1) a suit for damages based on an oral contract or agreement; (2) a claim for services rendered in hauling pipe for defendant Katz; and (3) a claim that defendant Katz was a partner, associate or undisclosed principal of F. D. Lefevre, with whom Palmer entered into a drilling and exploration agreement. The plaintiff abandoned, in the trial court, his claim under count No. 3.

The court submitted the following issues to the jury:

"Question No. 1: Do you find from a preponderance of the evidence that defendant Katz promised to pay plaintiff Palmer for every new area submitted by plaintiff and accepted by said defendant, which proved to be a producing oil field, a bonus of $5,000.00 for such producing field, and $1,000.00 for each producing well therein? Answer: 'Yes' or 'No.'

"Question No. 2: Do you find from a preponderance of the evidence that defendant Katz agreed to pay plaintiff Palmer for hauling pipe for the benefit of defendant Katz? Answer 'Yes' or 'No.'

"If you have answered 'yes' to the foregoing Question No. 2, then answer Ques-

tion No. 3: If you answer 'No' to Question No. 2, you need not answer Question No. 3.

"Question No. 3: What amount of money do you find from a preponderance of the evidence to be the reasonable value of the hauling of pipe for defendant Katz? Answer in Dollars and Cents."

The jury answered issue 1 and 2 "yes", and No. 3, $300.

After the verdict was returned, defendant filed a motion for judgment non obstante veredicto and also a motion to disregard special issue No. 1 and to render judgment as prayed for in said motion. The motion to disregard the finding of the jury to special issue No. 1 was granted and judgment was rendered in favor of plaintiff for $896.-95, being the amount tendered plaintiff by defendant to cover amount due him for services rendered and expenses incurred in connection therewith, $478.76 being the aggregate of 12% of 1/16th royalty on the production from the Albercas lease in Webb County up to and including the month of February, 1947, and for the sum of $300, being a reasonable charge for hauling pipe, as found by the jury in response to special issue No. 3. The judgment vested title in plaintiff to 12% of the 1/16th overriding royalty in certain lands in Webb County. All costs were adjudged against the defendant, from which judgment the plaintiff has appealed.

In March, 1945, plaintiff Palmer was a geologist with offices in the city of San Antonio. The defendant Katz was engaged in various lines of business including the oil business. Palmer at that time was employed as a geologist by R. F. Schoolfield. The defendant Katz was desirous of having Palmer work for him as a geologist. After some negotiations, Palmer and Katz entered into an oral agreement whereby Palmer agreed to work for Katz and to submit different areas to him in which he thought there was a possibility of obtaining production of oil. It is undisputed that such a contract was entered into between the parties. The only controversy between Katz and Palmer is as to what Palmer's compensation was to be for the services to be rendered. It is the contention of Palmer that Katz agreed to pay him $500 each month as geological expenses and for every new area submitted by him and accepted by Katz, which proved to be a producing oil field, that Katz agreed to pay him a bonus of $5,000 for such producing field and $1,000 for each producing well therein. It was the contention of Katz that he agreed to pay Palmer $500 per month as geological expense and 12% of the profit obtained from all leases recommended by Palmer and accepted by Katz. It will thus be seen that the only controversy between the parties as to the contract is as to whether Palmer was to receive $5,-000 for each oil field and $1,000 for each oil well, or 12% of the profits made by Katz on each area submitted.

■ The jury, in answer to special issue No. 1, resolved the controversy in favor of Palmer, such finding of the jury being supported by proper pleadings and sufficient evidence. The question for our determination is whether the court erred in disregarding the finding of the jury to such special issue and in refusing to render judgment in favor of Palmer on his theory and in rendering judgment based upon the theory of Katz.

It was the contention of Katz in the trial court, and it is his contention here, that the oral agreement was lacking in mutuality, was uncertain and unlimited as to the time in which it was to be performed and, therefore, unenforceable. The trial court took this view of the agreement and based thereon, disregarded the finding of the jury to special issue No. 1 and rendered judgment as set out above. The evidence discloses that after the agreement was entered into between the parties, that Palmer submitted five different areas to Katz for his consideration and that they were each accepted. Among the areas submitted is the one involved herein, known as the Albercas field. The first four areas submitted and accepted by Katz proved to be non productive. Katz assigned the oil and gas lease covering the Albercas area to Blanco Oil Company, receiving therefor a cash consideration of $2,500 and retaining a 1/16th overriding royalty interest therein. The Blanco proceeded to drill

said area and developed four producing oil wells thereon.

■■ We do not agree with the contention that the agreement is unenforceable because it lacks mutuality, is uncertain and indefinite as to duration. It is true that the original agreement lacks mutuality for the reason that Palmer did not obligate himself to submit to Katz any areas whatsoever. However, this lack of mutuality is supplied by performance. "Although there is a lack of mutuality in the beginning, this may be cured by the other party subsequently binding himself also by promise or act. Thus, if A promises B to pay him a sum of money if he will do a particular act or make a particular promise, and B does the act, the promise thereupon becomes binding, although B at the time of the promise does not engage to do the act or to make the promise." 17 C.J.S., Contracts, § 100, page 449.

So, in this case, although Palmer was not obligated to submit any area to Katz, he nevertheless did submit the Albercas area involved herein. Katz accepted the same, assigned his contract to the Blanco. Blanco developed the area and thus the lack of mutuality in the inception of the contract was furnished by the performance thereof.

■ It is true that there is no specific time for the performance or termination of the agreement. Under such circumstances, the law implies a reasonable time in which a contract is to be performed. "The failure of an executory contract to state the time within which it is to be performed does not render it void for uncertainty, since it will be implied that performance is to be within a reasonable time; nor is a contract fatally indefinite merely because it does not specify a time presently definite for its termination * * *." 17 C.J.S., Contracts, § 36, page 370.

■ Defendant contends that the contract is unenforceable by reason of the fact that in the future, additional producing wells may be discovered in the Albercas field and that plaintiff thereby would be entitled to receive $1,000 for each such additional well. That there is nothing in the contract as to when such wells might be drilled, etc. We are unable to perceive anything in that situation which would make the contract unenforceable. It is true that defendant has assigned the lease covering the Albercas area to the Blanco Oil Company and has lost control thereof. However, he retained a 1/16th overriding royalty and he will be protected to that extent. Furthermore, he could not defeat his obligation to the plaintiff by assigning the oil and gas lease and relinquishing the control thereof. Counsel for the plaintiff, in their brief, illustrate the situation very forceably and compare it to an inventor selling his invention to a manufacturer retaining a royalty interest in each of the articles which may be thereafter produced and sold. If such manfacturer desires to sell his interest in the invention, he can either convey the article charged with the inventor's royalty interest or he can, where there is no notice of the inventor's right to the purchaser, convey the entire interest, but if he does so, he is still liable to the inventor for his damages under the original contract. However, we are not called upon to decide whether the contract is unenforceable as to any future wells that may be drilled in this area. The plaintiff having performed his part of the agreement and defendant having accepted the benefits thereof, plaintiff is entitled to recover his compensation earned thereunder. Johnson v. Breckenridge-Stephens Title Company, Tex.Com.App., 257 S.W. 223. We do not believe the contract is so uncertain as to render it unenforceable. This is not an action for specific performance of the contract but is one for damages for a breach thereof. The same degree of certainty is not required in an action for damages as is required to warrant a decree of specific performance. 38 Tex.Jur., page 678; Hooven Radiator Co. v. Little Motor Kar Co., Tex.Civ.App., 291 S.W. 313. "A contract is sufficiently definite and certain if it leaves no reasonable doubt as to what the parties intended and as to the specific thing that the Court is called upon to have performed. Absolute and positive certainty is not required; reasonable certainty is sufficient." 10 Tex.Jur., page 176. See also Texas Farm Bureau Cotton Association v. Stovall, 113 Tex. 273, 253 S.W. 1101; Briscoe v. Bright's Adm'r, Tex.Com.App., 231 S.W. 1082.

We have examined the cases cited by the defendant in support of his contention, but it is our opinion that none is in point here. We do believe that the case cited by the plaintiff of Texas Conservative Oil Company v. Jolly, Tex.Civ.App., 149 S.W.2d 265, sustains our holding made herein.

It is our conclusion that the trial court erred in disregarding the answer of the jury to special issue No. 1. It was undisputed that the plaintiff submitted the Albercas area to the defendant; that same was accepted by him; that he caused the same to be developed and an oil field was discovered and four producing wells were found in such area. The jury having found, such finding being supported by the pleadings and evidence, that the defendant agreed to pay the plaintiff $5,000 for each oil field discovered in territory submitted by him and $1,000 for each oil well brought in thereon, in keeping with the verdict of the jury, plaintiff is entitled to a judgment based thereon in the sum of $9,000. The case appears to have been fully developed. It, therefore, becomes our duty to render the kind of judgment here that should have been rendered in the trial court. We conclude that the judgment awarding the plaintiff a 12% interest in the ⅟₁₆th overriding royalty in the oil and gas lease described in the judgment, should be reversed and judgment rendered that plaintiff has no interest in said lease. The judgment for $478.76 in favor of plaintiff covering oil runs from the oil and gas lease is reversed and judgment is here rendered that plaintiff take nothing by reason thereof. The plaintiff is entitled to a judgment against the defendant for the sum of $9,-000 based on the finding of the jury to issue No. 1 and judgment is here rendered for the plaintiff against the defendant for said amount.

The judgment awarding plaintiff $896.95, being the amount tendered the defendant to cover expenses and for $300 based on the jury finding to issue No. 3, is affirmed. The judgment of the trial court in all other respects is affirmed. All costs of this appeal are adjudged against the defendant Katz. Affirmed in part, reversed and rendered in part.